UNITED STATES of America,
Plaintiff–Appellee,

v.

Wendell WOODS, Defendant–Appellant.

No. 91–56422.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 1993.

Decided June 8, 1993.

Deborah Lewis, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Mark D. Flanagan and Miriam A. Krinsky, Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.

Before: HALL, WIGGINS, and TROTT, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

## OVERVIEW AND JURISDICTION

Wendell Woods appeals the district court's order revoking his conditional release pursuant to 18 U.S.C. § 4246(f). The district court had jurisdiction under 18 U.S.C. §§ 3231, 4246(f). This court has jurisdiction under 28 U.S.C. § 1291. We reverse.

## BACKGROUND

On November 5, 1979, Mr. Woods was sentenced to twelve years imprisonment for bank robbery. While in prison, Mr. Woods was diagnosed with a mental impairment. He spent the next eight years shuttling between penitentiaries and medical centers. On February 26, 1987, he was transferred to the Federal Medical Center at Rochester, Minnesota.

In anticipation of Mr. Woods' release from custody, the district court for the District of Minnesota ("Minnesota district court") held a hearing to determine whether Mr. Woods posed a threat to society. On September 29, 1987, the Minnesota district court found that Mr. Woods was suffering from a mental disease or defect which would create a substantial risk of bodily injury to another person or serious damage to the property of another if he were released from the Rochester facility. As a result, the Minnesota district court ordered that Mr. Woods remain hospitalized pursuant to 18 U.S.C. 4246(d).

On December 1, 1987, the Minnesota district court granted Mr. Woods a conditional discharge pursuant to 18 U.S.C. 4246(e). However, Mr. Woods violated the terms of his conditional release and was recommitted on March 30, 1990.

Mr. Woods then filed a second petition for release. On November 7, 1990, the Minnesota district court granted his request. Mr. Woods' release was made conditional on the acceptance of certain terms. He signed a document indicating that he understood that he was required to follow the conditions set out in the Minnesota district court's condi-

tional release order. One of the terms of Mr. Woods' conditional release was that he abide by the rules and regulations established by the United States Probation Office (USPO) for the Central District of California—the agency responsible for monitoring his conditional release.[1]

Mr. Nagshineh, the USPO officer assigned to Mr. Woods' case, spoke with several psychiatrists and psychologists familiar with Mr. Woods' condition. He was told that the consumption of alcohol would negatively affect the defendant's medication. As a result, he instructed Mr. Woods not to drink alcohol.

Mr. Woods chose not to comply with this condition. On two occasions, Mr. Nagshineh discovered that Mr. Woods had consumed alcohol and had become violent. Mr. Nagshineh informed the district court for the Central District of California ("California district court") of this violation. The California district court responded by issuing a bench warrant for Mr. Woods' arrest. On August 14, 1991, Mr. Woods was taken into custody.

On August 16, 1991, the California district court held an evidentiary hearing to determine whether Mr. Woods' conditional release should be revoked. It found that one of the terms of Mr. Woods' release was that he abide by the conditions established by the USPO and that he had been instructed by Mr. Nagshineh to avoid alcohol. Because he consumed alcohol, Mr. Woods had violated the terms of his conditional release. The use of alcohol made Mr. Woods a danger to other people and the property of other people. Under 18 U.S.C. § 4246(f), the California district court concluded that these circumstances justified revocation of Mr. Woods' conditional release.

## STANDARD OF REVIEW

The district court's findings of fact are reviewed under the clearly erroneous standard. *United States v. Stone*, 813 F.2d 1536, 1538 (9th Cir.), *cert. denied* 484 U.S. 839, 108 S.Ct. 125, 98 L.Ed.2d 83 (1987). The district court's interpretation of 18

1. Mr. Woods was placed in a halfway house in Los Angeles and jurisdiction over his case was transferred to the district court for the Central District of California.

U.S.C. § 4246 is reviewed de novo. *United States v. Valencia–Roldan,* 893 F.2d 1080, 1082 (9th Cir.), *cert. denied,* 495 U.S. 935, 110 S.Ct. 2181, 109 L.Ed.2d 509 (1991).

## DISCUSSION

### A. *Mootness*

■ Mr. Woods contends that the California district court erred in revoking his conditional release. Before reaching the merits of this claim we must first determine whether this controversy is moot. At oral argument we were informed that following the district court's revocation order of August 1991, Mr. Woods was granted another conditional release. This release was revoked in September 1992. Thus, Mr. Woods' current confinement is not due to the revocation order being challenged in this action.

Nonetheless, we decline to apply the mootness doctrine in this case. Mr. Woods' hospital detentions are usually for relatively brief time periods, and are not likely to persist long enough to allow for the completion of appellate review. Moreover, Mr. Woods continues to be subject to the terms of the Minnesota district court's conditional release order. Violation of this order served as the basis of the revocation order at issue. Finally, the proper construction of 18 U.S.C. § 4246 is an issue of continuing and public importance. For these reasons we hold that Mr. Woods' claim is not moot. *Friend v. United States,* 388 F.2d 579 (D.C.Cir.1967).

### B. *Revocation Order*

Turning to the merits of Mr. Woods' claim, we note that the Courts of Appeals have not had occasion to interpret 18 U.S.C. § 4246(f). In resolving Mr. Woods' claim we focus exclusively on the text of the statute.[2] We note, however, that the legislative history of this section is not helpful. See S.Rep. 225, 98th Cong., 2d Sess., 1984 U.S.Code Cong. & Ad.News 3182, 3435.

■ Under 18 U.S.C. § 4246(f), a district court may revoke a conditional discharge if two conditions are met. First, a person must fail to comply with his prescribed regimen of medical, psychiatric, or psychological treatment. Second, the court must conduct a hearing and determine whether in light of this failure the person's continued release would pose a risk to society.

■ Mr. Woods contends that the regimen of medical, psychiatric, or psychological treatment established for him failed to comply with statutory requirements. He argues that revocation based on the failure to comply with a flawed regimen violates due process. We agree.

The Minnesota district court was required to provide a regimen of medical, psychiatric, or psychological treatment for Mr. Woods under 18 U.S.C. § 4246(e)(2)(A). This section does not expressly state who should prescribe the treatment regimen. However, the statute clearly envisions that a medical expert will be consulted or retained. Indeed, the statute requires that medical experts both approve and administer the treatment regimen. 18 U.S.C. §§ 4246(e)(2)(A), 4246(f).

In the instant case, the Minnesota district court did not consult or retain a medical expert. Instead, it delegated the responsibility for prescribing a treatment regimen to the USPO for the Central District of California. The Minnesota district court seemed to consider Mr. Woods' discharge from civil commitment as analogous to a person serving a sentence of probation. This is evidenced by the boilerplate language used in the conditional release order. Although not prohibit-

---

**2.** Section 4246(f) provides:

The director of a medical facility responsible for administering a regimen imposed on a person conditionally discharged under subsection (e) shall notify the Attorney General and the court having jurisdiction over the person of any failure of the person to comply with the regimen. Upon such notice, or upon other probable cause to believe that the person has failed to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, the person may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him. The court shall, after a hearing, determine whether the person should be remanded to a suitable facility on the ground that, in light of his failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, his continued release would create a substantial risk of bodily injury to another person or serious damage to property of another.

ed by the statute, this approach makes little sense. Unskilled in the field of medicine, penal officers are hardly equipped for the complex task of prescribing individualized treatment regimens.

The Minnesota district court also erred by ignoring the express requirements of 18 U.S.C. 4246(e)(2)(A). This section requires that a prescribed regimen of medical, psychiatric, or psychological care must be approved by both the district court and the director of the medical facility in which the person is committed. There is no evidence that either the Minnesota district court or the director of the Rochester facility where Mr. Woods was located prior to his release ever approved the regimen established by Mr. Nagshineh.

It could be argued that these omissions are excusable because of the unique circumstances of this case. The Minnesota district court transferred jurisdiction over Mr. Woods' case to the Central District of California before Mr. Nagshineh had an opportunity to develop a treatment regimen. As a result, the court did not have an opportunity to review the prescribed regimen or obtain the approval of the medical director of the Rochester facility.

If the Minnesota district court was unable to comply with the statutory requirements, the California district court should have filled this void. There is no indication that the California district court addressed the deficiencies in the Minnesota district court's release order. It did not approve the regimen developed by Mr. Nagshineh or consult the director of the Rochester facility. In addition, no effort was made to retain a medical expert to ensure that Mr. Woods was receiving proper care.

The California district court had the opportunity to ensure that the statutory requirements were followed. It could have acted when it assumed control of the case during the revocation proceeding. The California district court should have realized that the proper procedures were not being followed when Mr. Nagshineh informed the court that Mr. Woods had failed to comply with his prescribed treatment regimen. Section 4246(f) provides that the director of the medical facility responsible for administering a person's treatment regimen should make this disclosure.

Cases involving the transfer of conditionally discharged persons such as Mr. Woods present difficult situations. A certain amount of discretion must be afforded to the district courts. However, this cannot come at the expense of the significant liberty interests at stake in civil commitment proceedings. *See United States v. Sahhar,* 917 F.2d 1197, 1206 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1591, 113 L.Ed.2d 655 (1991); *United States v. Baker,* 807 F.2d 1315, 1320–22 (6th Cir.1986).

Congress was cognizant of this liberty interest and set forth specific procedural guidelines to ensure that it was not infringed. *Id.* In this case, the district courts failed to comply with these procedures. The result was a flawed treatment regimen. Revoking Mr. Woods' conditional release based on noncompliance with this flawed regimen violates due process. As a result, we reverse the district court's decision.

On remand, we instruct the district court to determine whether Mr. Woods currently poses a threat to society. If so, he should be recommitted. However, if the court determines that Mr. Woods is sufficiently recovered, he should be conditionally discharged under a treatment regimen adopted by the district court. This treatment regimen will have to be developed in accordance with the dictates of the statute. This will require the district court to consult or retain medical experts, including the director of the Rochester facility. In addition, the district court should select a medical facility to administer the plan. If Mr. Woods violates the terms of his treatment regimen his conditional release will be subject to revocation and he will risk recommitment.

REVERSED.