<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-6316**

UNITED STATES OF AMERICA,

Petitioner - Appellee,

v.

CORNELL M. TAYLOR,

Respondent - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  W. Earl Britt, Senior District Judge.  (5:06-hc-02196-BR)

Argued:  January 29, 2013                Decided:  March 5, 2013

Before WILKINSON, MOTZ, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Diana Helene Pereira, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Jennifer Dee Dannels, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Joseph B. Gilbert, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, David T. Huband, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Cornell M. Taylor ("Appellant") appeals the district court's order continuing his civil commitment pursuant to 18 U.S.C. § 4246. Appellant argues that the district court erred in concluding he continues to suffer from a mental disease or defect such that his release would create a substantial risk of bodily injury to another person or serious damage to the property of another. In so doing, Appellant asserts that his recent good behavior justifies his release, offering only his own testimony in support. The evidence presented below, including an expert report from Appellant's treating physician and a psychologist, testimony from the treating physician, and an additional expert report authored by a court-appointed independent physician, convincingly demonstrates that Appellant's continued commitment is warranted. For these reasons and as set forth below, we affirm.

I.

On February 1, 2006, the District Court for the Central District of Illinois found Appellant incompetent to stand trial for the charge of threatening a federal official. Thereafter, on July 10, 2006, the Illinois district court ordered Appellant evaluated for civil commitment pursuant to 18

3

U.S.C. § 4246.[1]  On November 3, 2006, the Government then filed a certificate of mental disease or defect and dangerousness in the District Court for the Eastern District of North Carolina.[2]  On January 9, 2007, the district court held a § 4246 hearing.  Upon finding by clear and convincing evidence that Appellant suffered from a mental disease or defect, as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the district court committed him under § 4246(d) in an order dated January 10, 2007.

---

[1]  "Section 4246 applies to individuals who are due for release from federal custody either because they have been found not competent to stand trial, because the charges against them have been dropped solely because of mental illness, or because they have completely served their sentences of imprisonment." United States v. Baker, 45 F.3d 837, 840 n.1 (4th Cir. 1995).

[2]  Pursuant to 18 U.S.C. § 4246(a), the director of the facility in which a person found incompetent to stand trial is hospitalized may certify that the person

> is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available, [and the director] shall transmit the certificate to the clerk of the court for the district in which the person is confined.

18 U.S.C. § 4246(a).  Because Appellant was then-hospitalized at the Mental Health Division at the Federal Medical Center in Butler, North Carolina, the warden filed the certificate in the District Court for the Eastern District of North Carolina.

On September 27, 2007, the district court ordered Appellant's conditional release to reside at a community home for adults in Springfield, Illinois.[3] The district court ultimately revoked his release on April 7, 2008.[4] Appellant was then returned to the Federal Medical Center in Butner, North Carolina ("Butner").

On March 28, 2011, mental health staff at Butner filed an annual report with the district court in accordance with 18 U.S.C. § 4247(e)(1)(B) concerning the mental condition of Appellant and the need for his continued commitment. The annual report, authored by Dr. Robert G. Lucking, M.D., and Dr. Angela Walden Weaver, Ph.D., indicated Appellant had been prescribed a combination of drugs, including Haloperidol Decanoate (an anti-psychotic medication), for treatment of his schizoaffective disorder. Against the advice of his primary clinician, Appellant refused to take the Haloperidol Decanoate. Due to Appellant's refusal to take the prescribed medication necessary to control his mental illness, the mental health staff concluded

---

[3] Neither the briefs nor the record indicate the precise grounds for Appellant's conditional release.

[4] The probation officer was informed that Appellant violated the conditions of his release by returning to the community home facility under the influence of alcohol and in possession of a bottle of alcohol. In addition, the probation officer reported experiencing problems supervising Appellant in the placement facility.

that Appellant was not suitable for conditional release and recommended continued commitment.

On November 9, 2011, Appellant moved the district court for a hearing to determine whether he still met criteria for commitment under § 4246. The next day, the district court set a hearing for February 6, 2012, to determine whether Appellant continued to meet the criteria for commitment. In connection with the hearing, the district court appointed an independent mental health examiner to evaluate Appellant.[5] The independent examiner, Dr. Katayoun Tabrizi, M.D., completed a forensic psychiatry report, which contained Appellant's relevant medical, psychiatric, and social background; a mental health diagnosis; and a risk assessment pursuant to § 4246.

Dr. Tabrizi examined Appellant on January 12, 2012, and diagnosed him as suffering from schizoaffective disorder, bipolar type; alcohol abuse, in a controlled environment; and adult antisocial behavior (provisional). She reported that Appellant was then presently prescribed anti-psychotic medication for his mental illness but was refusing to take it. She stated that Appellant showed limited insight into his mental illness and need for treatment. Appellant's symptoms, which

---

[5] Appellant requested the appointment of an independent psychiatrist in his November 9, 2011 motion.

6

were active at the time of his evaluation, included irritable affect, argumentativeness, and paranoia. Dr. Tabrizi further reported that treatment with anti-psychotic medication, which Appellant was refusing, is the only effective treatment for his psychotic symptoms.

Dr. Tabrizi also concluded that Appellant exhibited several risk factors shown to be associated with an increased risk of violent/aggressive behavior, including a psychotic mental illness with persecutory delusions, poor insight into his mental illness, refusal of anti-psychotic medications, history of alcohol abuse while subject to release conditions, history of aggression and threats due to his psychiatric symptoms, history of gun possession, inadequate social support, and an extensive juvenile and criminal history. Based on these factors, Dr. Tabrizi opined that as a result of Appellant's mental disease or defect, his release would create substantial risk for bodily injury and damage to the property of another. She concluded, "[f]or as long as [Appellant] is refusing to accept antipsychotic medications, he is not a suitable candidate for conditional release to a community-based program." J.A. 44.[6]

---

[6] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

On February 6, 2012, the district court convened the hearing to determine whether Appellant continued to meet the criteria for commitment under § 4246. Appellant's treating psychiatrist, Dr. Lucking, testified that he had been treating Appellant since his admission to Butner in 2006. Dr. Lucking further stated that Appellant suffered from schizoaffective disorder and was then demonstrating

> significant re-emergence of psychotic symptoms with evidence of paranoid delusional symptoms involving Judge Britt, myself, his attorney Ms. Pereira, thinking we're conspiring to keep him locked up in this facility. He has some significant anger and hostility and aggression, which I don't think you can attribute specifically to either or [sic] the affective or psychotic symptoms. It's probably a combination of both of them. So he's angry, hostile, uncooperative.

J.A. 17. He also opined that Appellant's refusal to take his prescribed medication had attributed to the reemergence of his psychotic symptoms and "a progressive decline into psychosis." Id. 18. Dr. Lucking further stated that Appellant had, in 2006, threatened to kill himself and staff and engaged in aggressive behavior by throwing and breaking food trays. Dr. Lucking concluded that, without medication, he expected Appellant to decline into further psychosis and to engage in the behaviors he

8

exhibited in 2006.[7]  Appellant's sole offer of support of his motion was his own testimony.

The district court concluded that Appellant continued to meet criteria for care and treatment under § 4246 and ordered Appellant's continued commitment.

Appellant now appeals that order, arguing the district court's determination supporting his continued commitment constitutes reversible error.

II.

We review the district court's factual findings for clear error and its legal conclusions de novo.  See United States v. Cox, 964 F.2d 1431, 1433 (4th Cir. 1992) ("The trial court's ruling denying [the committed person's] unconditional release . . . is a factual determination that will be overturned by this court only if clearly erroneous."); United States v. Hall, 664 F.3d 456, 462 (4th Cir. 2012) ("On appeal, we review

---

[7] Dr. Tabrizi did not testify at the hearing, though Dr. Lucking confirmed that she held the same view.  See J.A. 19 ("[Dr. Tabrizi's] opinion was similar.  She believed that [Appellant] met the criteria for commitment and should not be released unless he was placed on treatment with an anti-psychotic.").  Likewise, staff psychologist Angela Walden Waver, Ph.D., did not testify but joined in the annual report with Dr. Lucking.

9

the district court's factual findings for clear error and its legal conclusions de novo.").

III.

A.

A person committed under § 4246 may, through his counsel or legal guardian, file a motion for a hearing to determine whether he should be released. See 18 U.S.C. § 4247(h). The court that ordered the commitment may discharge the person if it finds, by a preponderance of the evidence, that the person has recovered from his mental disease or defect to such an extent that his unconditional release would no longer create "a substantial risk of bodily injury to another person or serious damage to property of another." Id. § 4246(e). The committed person seeking discharge bears the burden of proving that he has so recovered. See United States v. Evanoff, 10 F.3d 559, 563 (8th Cir. 1993); Sealed Appellee v. Sealed Appellant, 665 F.3d 620, 623 n.4 (5th Cir. 2011).[8]

---

[8] See also United States v. Anderson, No. 97–6372, 1998 WL 372382, at *2 (4th Cir. May 19, 1998) (On a motion to discharge, "the Government no longer bears the burden of proving dangerousness. Rather, [the committed person] must present a preponderance of evidence proving his release 'no longer create[s] a substantial risk of bodily injury.'" (quoting 18 U.S.C. § 4246(e))).

10

B.

In this case, we conclude that the district court's findings justifying Appellant's continued commitment were not clearly erroneous. First, the expert witnesses, through their testimony and reports, offered concurring opinions establishing that Appellant suffers from a severe mental illness, namely, schizoaffective disorder. They reported that Appellant continued to manifest active symptoms of his illness, and nothing in the record contradicts the expert opinions that Appellant continued to suffer from a severe mental disease or defect. He offered no testimony other than his own to suggest he had recovered from his illness. Accordingly, the district court did not clearly err when it found that Appellant continued to suffer from a mental disease or defect.

Second, the totality of the evidence before the district court established that, in light of Appellant's mental illness, his release would create a substantial risk of bodily injury to another person or serious damage to property of another. In support of her opinion, the independent psychiatrist, Dr. Tabrizi, reported that Appellant exhibited several risk factors shown to be associated with an increased risk of violent/aggressive behavior, including a psychotic mental illness with persecutory delusions, poor insight into his mental illness, refusal of anti-psychotic medications, history

11

of alcohol abuse while subject to release conditions, history of aggression and threats due to his psychiatric symptoms, history of gun possession, inadequate social support, and an extensive juvenile and criminal history.

Dr. Lucking testified that Appellant's refusal to take his prescribed medication during his current hospitalization has attributed to the reemergence of his psychotic symptoms, which Dr. Lucking expects will cause Appellant to engage in threatening and aggressive behavior against persons and property. Dr. Lucking testified concerning Appellant's condition before he was medicated:

> [Appellant] threatened to kill himself and other staff members. He engaged in specific aggressive behavior against property by breaking and throwing food trays. I think it's only a limited period of time before we see the emergence of this behavior again.

J.A. 18-19.

The factors presented by the experts are among those typically considered by mental health professionals when conducting risk assessments. See, e.g., United States v. Cox, 964 F.2d 1431, 1433 (4th Cir. 1992); United States v. Ecker, 30 F.3d 966, 970 (8th Cir. 1994). Thus, when considered in its entirety, the evidence before the district court established that Appellant's release would create a substantial risk of bodily injury to another person or serious damage to property of another.

12

Appellant responds that the opinions offered by Dr. Lucking and the opinions contained in the March 2011 Butner annual report regarding Appellant's risk of dangerousness are speculative in nature, and, thus, not enough to support a finding of "substantial risk" under § 4246. He emphasizes that, "since the annual report entered in October 2011, [he] has not engaged in any physically aggressive behavior directed against others or property." Appellant's Br. 11. The dangerousness evaluation and determination, however, require the evaluators and the district court to consider Appellant's "entire behavioral and psychological profile." United States v. Williams, 299 F.3d 673, 677 (8th Cir. 2002); see also Cox, 964 F.2d at 1433. Thus, the experts properly considered a broad range of historical and clinical data, rather than a selected event or narrowly defined characteristic or time period. As such, the length of time since Appellant's last aggressive behavior is merely one piece of data among the array of information that is properly considered.

As detailed above, the experts involved in Appellant's review considered a host of relevant factors that convinced them Appellant was still suffering from a mental disease or defect to the extent that his release would create a substantial risk of bodily injury to another person or serious damage to property of another. As such, the evidence cleared

13

the statutory hurdle that Appellant's release presents a "substantial risk." 18 U.S.C. § 4246(d). Accordingly, Appellant did not meet his burden to show that he had recovered, and the district court did not clearly err when it relied upon the uncontroverted expert testimony to find that Appellant continues to satisfy the criteria for civil commitment under § 4246.

## IV.

For the foregoing reasons, the district court's order is

AFFIRMED.